# STATE OF MICHIGAN

# COURT OF APPEALS

In re VANVLEET, Minors.

UNPUBLISHED
November 3, 2016

No. 332321
Calhoun Circuit Court
Family Division
LC No. 14-001453-NA

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

Respondent-mother, D. Foster, appeals as of right the trial court's order terminating her parental rights to her three minor children under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to the parent). We affirm.

## I. FACTUAL BACKGROUND

The Department of Health and Human Services (the Department) became involved with the children in early 2014 after Foster engaged in a series of incidents that placed the children at risk. First, Foster and her boyfriend were involved in a road-rage incident during which she was shot while the middle child was present. Second, Foster attempted to kill herself in April 2014; again, the middle child was present. Finally, Foster and her boyfriend were arrested in a methamphetamine raid on their home in May 2014. The Department removed the children from Foster's care.

Foster pleaded responsible for placing the children at a risk of harm. From May 2014 through November 2015, Foster engaged in drug court, counseling, and mental health treatment. It is undisputed that Foster made progress and, as a result, the Department returned the children to Foster's care in November 2015.

However, in December 2015, Foster drove while intoxicated. Yet again, the middle child was present. Foster crashed through several yards, struck a flag pole, and abandoned her vehicle. A breathalyzer revealed Foster's blood alcohol content was 0.21. Keeley Wetzel, the children's foster care worker, testified that she was at the home for her weekly visit when Foster was arrested. The children were highly traumatized, threatened harm to others, screamed, and cried. The trial court again removed the children from Foster's care and, in February 2016, the Department initiated termination proceedings.

-1-

At the termination hearing, Wetzel testified that Foster had pleaded guilty to charges of operating while intoxicated stemming from her decision to drive drunk in the December 2015 incident. Wetzel detailed the extensive services the Department had offered Foster—including psychological services, counseling, parenting classes, drug abuse treatment, drug screens, parenting time, and transportation. According to Wetzel, Foster's December 2015 behavior arose after she stopped taking prescribed psychiatric medications, and her failure to take her medications had resulted in trouble throughout the proceedings.

According to Kathleen Keeder, Foster's counselor, Foster would sometimes demonstrate a benefit from counseling, but then "things would deteriorate." Foster did not sustain her progress but continually reverted to destructive behavior and poor choices. Keeder testified that there was no reasonable expectation that Foster would improve with further counseling. Even Foster admitted that counseling was not entirely helpful, but she stated that she believed it had helped a little.

Brian Bornefeld, the children's counselor, testified that there was a strong and significant bond between Foster and the children. However, the bond was unhealthy. It led the children to make excuses for Foster's poor behavior, lie to authority figures on her behalf, and blame other people for the consequences of Foster's actions. "[T]hat's a dangerous, dangerous mind set to get into when you're that young." Foster also missed many appointments that Bornefeld had with the children. Bornefeld opined that, while termination would be traumatic for the children, it was in their best interests because they needed stability, predictability, and structure to improve.

Following the termination hearing, the trial court terminated Foster's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). Specifically, the trial court found that adjudication occurred because of Foster's criminal behavior, substance abuse, and mental health issues, which were not rectified and were not likely to be rectified within a reasonable time. The trial court found that although Foster completed with services, she did not benefit from them and repeatedly put the children at a risk of harm.

Regarding the children's best interests, the trial court found that the children were strongly bonded to Foster and would be traumatized by termination, but it also found that they would face further trauma if they remained in Foster's care. It found that termination would provide the children with the opportunity to have permanence and stability, which they would not have in Foster's care. Accordingly, it found that termination was in the children's best interests. Foster now appeals.

II. STANDARDS OF REVIEW

This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). We also review for clear error the trial court's determination regarding the children's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *Mason*, 486 Mich at 152. We review de novo issues of constitutional law. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014).

## III. CONSTITUTIONAL RIGHTS AND STATUTORY GROUNDS

Foster contends that the trial court violated her constitutional right to parent her children and that statutory grounds did not support terminating her parental rights. We disagree.

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects "the interest of parents in the care, custody, and control of their children . . . ." *Troxel v Granville*, 530 US 57, 65; 120 S Ct 2054; 147 L Ed 2d 49 (2000). Our statutes, court rules, and DHS policies are in place to generally ensure that parents are provided with procedural due process when their children are removed from their home. *In re Rood*, 483 Mich 73, 93; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). But once the Department has established statutory grounds for termination, the state's interests in the children's safety overcome the parent's right to custody and control of his or her children. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000).

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's rights if there is clear and convincing evidence that:

> [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

This statutory ground exists when the conditions that brought the children into foster care continue to exist despite "time to make changes and the opportunity to take advantage of a variety of services." See *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

MCL 712A.19b(3)(g) provides that the trial court may terminate a parent's rights if

> [t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

And MCL 712A.19b(3)(j) provides that the trial court may terminate parental rights if

> [t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court may properly consider the parent's mental health and substance abuse conditions when determining whether a parent can provide a child with proper care and custody and whether it is reasonably likely that the child will be harmed if returned to the parent's home. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008); *In re AH*, 245 Mich App 77, 87; 627 NW2d 33 (2001). A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody and that the child may be harmed if returned to the parent's home. *White*, 303 Mich App at 710-711. The parent must both comply with *and* benefit from the service plan. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

In this case, the children came into care because Foster's substance abuse and mental health conditions placed the children at a risk of harm. Throughout the pendency of the case, Foster complied with the service plan and initially it appeared that she derived some benefit. However, Foster's behavior in December 2015 demonstrated that she did not benefit from the service plan. Foster's counselor testified that Foster continued to make poor decisions, did not benefit from counseling, and that there was no reasonable likelihood that she would benefit in the future.

Given these facts, we are not definitely and firmly convinced that the trial court made a mistake when it found that Foster had not rectified the conditions that brought the children into care, could not provide the children with proper care and custody, placed the children at a risk of harm through her conduct, and that it was not reasonably likely that Foster would improve within a reasonable time. Because the trial court did not err in finding that statutory grounds supported terminating Foster's parental rights, the state's interests in the children's safety overcame Foster's constitutional liberty interests in parenting her children.

## IV. BEST INTERESTS

Foster contends that the trial court erred when it found that termination was in the children's best interests because they were strongly bonded with Foster and termination would traumatize them. We disagree.

The trial court should weigh all the evidence available to determine the children's best interests. *White*, 303 Mich App at 713. To determine whether termination of a parent's parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Even when the parent and children are strongly bonded, if there is a serious dispute about whether a parent has a *healthy* bond with the children, termination may be in the children's best interests. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2001), overruled in part on other grounds by *In re Sanders*, 495 Mich 394, 422-423 (2014).

Foster focuses exclusively on the strength of the bond between herself and the children when arguing that termination was not in the children's best interests. However, Bornefeld explicitly testified that the children's bond with Foster was not healthy and that the children needed stability that Foster could not provide. Additionally, there was testimony that Foster's behavior had traumatized the children while they were in her care and that Foster consistently placed the middle child at a risk of physical danger with her actions. Considering the full record in this case, we are not definitely and firmly convinced that the trial court made a mistake when it found that terminating Foster's parental rights was in the children's best interests.

We affirm.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher